STOKER, Judge.
This is a suit by the owner of a 1976 Chevrolet Impala automobile for damages against an automobile repair shop and plaintiff’s insurer. The plaintiff Charles Ray Alexander, Sr. (Alexander) took his automobile to defendant Acadian Pontiac-Buick, Inc. (Acadian) for repair of a motor failure breakdown. Defendant Motors Insurance Corporation (MIC) insured Alexander under a “breakdown” policy which insured Alexander against major automobile damage or failure which occurred within 36 months or 36,000 miles of travel.
The trial court gave judgment in favor of defendants and Alexander has appealed. We affirm. The case presents purely factual issues.
FACTS
The trial court gave the following summary of the facts in this case which we take the liberty of adopting:
“The plaintiff in this case purchased a new 1976 Chevrolet Impala automobile from the Jeanerette Motor Company, and at the same time he purchased an insurance policy from the Motors Insurance Corporation (MIC). The MIC policy is sometimes referred to as a ‘breakdown’ policy and is designed to insure the owner of the vehicle in the case of major automobile damage that occurs within 36 months of the issuance of the policy or after the vehicle has traversed 36,000 miles, whichever comes first.
“After the car had gone about 29,000 miles, in November of 1977 the crankshaft failed. A claim was made against MIC and they responded by paying for the installation of a rebuilt crankshaft, an engine overhaul, and a car rental bill of $50. The plaintiff was disturbed about the use of the rebuilt crankshaft, preferring instead to have a new one. Mr. Larry Simon, the senior adjuster of MIC who handled the claim, agreed to carry the coverage further and if there was any additional difficulties, they would be recompensed by MIC. After the car had been driven 39,000 miles, the engine froze while the car was in Lafayette, and the plaintiff had the car removed to the Aca-dian Pontiac-Buick garage in New Iberia for repair. The repair or lack of repair is the crux of this suit.
“Mr. Simon met with representatives of Acadian Pontiac in New Iberia to discuss the repairs and the payment of it. They concluded that the vehicle needed a new block, which was ordered from Polk Chevrolet in Baton Rouge. It was then installed in the plaintiff’s vehicle, and the repairs were almost complete when an incident arose which terminated the attempt.
“The plaintiff went to the Acadian Pontiac garage and expressed his dissatisfaction voluably [sic] with the failure of the Acadian Pontiac people to put a brand new complete motor in his vehicle. The dispute and his actions caused the Acadian Pontiac people to call the police and to end any business dealings with the plaintiff. They removed the new engine block from the vehicle and put the plaintiff’s old engine block and the rest of his parts in the plaintiff’s trunk. The next day the plaintiff picked up his car and brought it to Fred Valsin’s garage, whereupon Mr. Valsin put in a brand new engine and billed the plaintiff for some $2023. The plaintiff has filed this suit seeking to recover this $2023 and also $5000 for mental anguish, breach of contract, and reasonable attorney’s fees of $2500 for having to bring this suit.
“It is the contention of the plaintiff that not only did the defendants fail to have his car prepared properly but that when Acadian Pontiac put his old block in the car, they in fact substituted a different block than the one that was originally in the plaintiff’s car. He produced two witnesses that seemed to bear out that claim, at least from their testimony. Sidney Lumpkin was a mechanic for Jeaner- *581 ette Motors who knows the plaintiff and knows that he did buy the Impala, which at the time had a blue 350 cubic inch Chevrolet engine in it. He states that the engine which the plaintiff displayed to him was a 327 cubic inch engine and not the one he had when it was purchased.
“Mr. Fred Valsin testified that he worked on the plaintiff’s car and he had noticed that it too had a 350 cubic inch blue engine before it was broken, and that when he saw the block and parts returned by Acadian Pontiac that it was ot a 350 cubic inch engine but a 327 cubic inch. Other members of the plaintiff’s family indicated that the engine was blue.”
Alexander partly bases his contention that the engine that was returned to him by Acadian was not his original engine on the fact that the engine returned to him was orange in color rather than blue. Although the evidence is clear that the engine is now orange, there is conflicting evidence as to its original color. However, we find it unnecessary to resolve this conflict. Antoine Elow, the mechanic at Acadian who worked on Alexander’s car, testified that he used some of the parts from Alexander’s original engine, including the heads, intake manifold, and valve covers, and that he spray-painted those parts orange to match the color of the new block to which he attached the parts. When seen from above with these parts attached, the whole engine looks orange. This may explain why Alexander believed that Acadian was installing an old engine before he halted the repairs. In any case, this would explain why Alexander’s engine now appears to be a different color from that which it was originally. Mr. Elow testified that the spray-painted parts were removed from the new block and returned to Alexander with his old block. Therefore, Alexander’s engine is not the same color as it was originally, and the difference in color does not mean that Aca-dian returned a different engine to Alexander.
Defendants demonstrated at trial that the serial numbers on the engine returned to Alexander matched the vehicle identification number of Alexander’s car. They also showed that the numbers were those of a 350 cubic inch engine. Alexander contends, however, that Mr. Elow admits changing the serial numbers on the engine block and that Alexander saw him do this. This statement is misleading and inaccurate. Mr. Elow testified that he stamped the serial number on the new engine block to match that of Alexander’s old engine block. No serial numbers appear on new engine blocks and it is standard practice recommended by the Pontiac and Buick Motor Division to transfer the serial numbers from the old engine block to the new engine block which replaces it. Alexander may have seen Elow performing this procedure.
Both Elow and his service manager, John Dominic, adamantly denied at trial that they altered the serial number on Alexander’s old engine block. Both parties testified that they returned Alexander’s old engine block to him along with all the original parts removed from the block. We find no manifest error in the trial court’s conclusion that Alexander failed to prove by a preponderance of the evidence that Acadian did not return his original engine to him.
Alexander has likewise failed to prove his claim against Motors Insurance Corporation. MIC had agreed to extend coverage beyond the original 36,000 mile warranty period only as to damage which resulted from the failure of the rebuilt crankshaft, the installation of which MIC had paid for during the warranty period. The breakdown in question occurred after the warranty period. MIC agreed to cover the replacement of Alexander’s engine block because the damage to the block was possibly caused by the crankshaft. None of the other engine parts which Valsin replaced were damaged because of the crankshaft failure, and in fact may not have been damaged at all. MIC paid $720.34 to Alexander, the retail price of a new engine block, and paid $192.25 to Acadian for towing and the labor performed before Alexan *582 der disrupted Acadian’s repair efforts. Since Alexander unilaterally halted the repairs, MIC is not obligated to pay a second fee for installing the new engine block. Therefore, MIC has paid Alexander all that it is obligated to pay him.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.